IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAY LLOYD HARRIS                                                                           PLAINTIFF

v.                                       Civil No. 6:21-CV-06157

DEPUTY WARDEN RICHARD T. BALL,                                                    DEFENDANTS
DIRECTOR DEXTER PAYNE, DR. GUY
HENRY, JOHN DOE ADC MEDICAL
DIRECTOR, WARDEN DEANGELO EARL

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of 28 U.S.C. § 1915A.[1] Under § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### I. BACKGROUND

Plaintiff filed his Complaint on December 14, 2021. (ECF No. 1). He alleges that his federal constitutional rights were violated while he was incarcerated in the Arkansas Division of Correction ("ADC"). Although not entirely clear from Plaintiff's Complaint, it appears that the events giving rise to the allegations occurred in the ADC Ouachita River Unit. (*Id*. at 3, 4).

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

1

For his first claim,[2] Plaintiff alleges that from February 6, 2019,[3] to the present time, Defendants Dr. Henry and John Doe Medical Director of the ADC ("Medical Defendants") denied him proper medical treatment for his "migraines and . . . aural migraines." (*Id*. at 4).  Plaintiff alleges that he was given Excedrin and other over-the-counter ("OTC") drugs for his migraines after he told the medical staff at intake screening that OTC drugs did not work for him.[4] (*Id*. at 4). Plaintiff alleges that he suffers from migraines and black-outs" as a result. (*Id*. at 5). Plaintiff apparently received unidentified prescription medication(s) for his migraines at some point, as he alleges that his prescription expired in February 2020, and, despite his requests, was not renewed until October of 2020. (*Id*.). He alleges that it ran out again in September 2021 and took three weeks to renew, or until October 28, 2021. He was told the medication was on back-order. (*Id*.). He alleges that it ran out again in November 2021, and the nurse told him the medication was on back-order. On November 29, 2021, he was told the medication was still unavailable, and was given OTC Tylenol instead, after he informed them that OTC medications were "useless." (*Id*.). As a result, Plaintiff alleges that his "migraines have been increasing in frequency and duration since July 2021, hitting up to 6 days a week." (*Id*.). Plaintiff "speculates[s]" that Dr. Henry failed to mention his migraines in the EOMIS records so that the ADC Classification Committee can "readily see it." (*Id*.).

Plaintiff proceeds against the Medical Defendants in their individual and official capacities for this claim. (*Id*. at 4). For the official capacity portion of his first claim, Plaintiff alleges that Defendant Dr. Henry chose less efficacious migraine medication(s) due to an ADC policy to limit medical costs, and the ADC Medical Director is the lead authority on ADC medical policies. (*Id*.

---

[2] Plaintiff's allegations are disjointed, but the Court will interpret to the extent possible.
[3] Part of Plaintiff's first claim may well be barred by the three-year statute of limitations. Without additional facts, however, that determination cannot be made at this time.
[4] Plaintiff identifies two drugs, neurophen and caffergot, which he states worked for him, but also states they are not available in the United States. (*Id*. at 5).

at 6). Plaintiff alleges that "this has left me in regular pain or trying to sleep through such pain. Refusing to give me proper medication has also prevented me from risking outside yard time." (*Id*.). Plaintiff further alleges "multiple nurses have mentioned an alternative medication as if it were not only on-hand, but expected to have been prescribed from the start." (*Id*.). Plaintiff alleges that the Medical Defendants were deliberately indifferent and inmates "can't get a second opinion, even though other medical doctors work onsite." (*Id*. at 7). Plaintiff lists two other instances of interaction with Defendant Dr. Henry. He alleges Henry was "told of neuropathy gave me a printout of yoga exercises. At a later visit he gave me shoes and insoles." (*Id*.). "When I saw Dr. Henry for carpal tunnel or arthritis, he dismissed my worries, claimed it was neither and printed out some exercises. A month later a visit for wrist pain, Dr. Henry jumped straight to carpal tunnel and prescribed a wrist brace and medication."[5] (*Id*.). Plaintiff alleges "[t]his seems to me to show deliberate indifference and no incompetence. Or deliberate policy mandated indifference?"

For his second claim, Plaintiff proceeds against Defendants Ball, Payne, and Earl ("ADC Defendants") in their official capacity only. (*Id*. at 6). He alleges they violated his rights starting from May 15, 2021, to the present time. (*Id*.). Specifically, Plaintiff alleges:

> At some point after April 2, 2021, and before May 15, 2021, in direct violation of several administrative directives and regulations, Deputy Warden Ball removed me from my education vo-tech assignment and onto utility or 'hoe squad,' an outdoor assignment. This put me in the position of choosing intense physical pain via aural migraines, or emotion at be being cut off from my mother and friend between whom we had 4-5 video visits and 4-5 phone calls weekly. I thought I could find empathy within the system via Mr. Earl and ADC's polices regarding the American's with Disabilities Act. Citing ADC AD 12-09 to Warden Earl failed to elicit a response. His replacement, Warden Watson, also failed to reply to another request citing AD 12-09. A third request, this time sent to Warden Byers, the current warden, has also gone unanswered.
>
> ADC policies allow for reasonable accommodations. The Federal Americans with Disabilities Act does as well. I can perform indoor job assignments. I can stubborn

---

[5] These additional interactions do not state a plausible claim for denial or delay of medical care, and will not be considered further.

my way through early stress of my normal migraines.  I can't function outdoors if my aural migraines cause me to black out.  (*Id*. at 6, 8).

. . .

Ignoring AD 18-07 IV & AR 004 2-5000 by removing me from my vo-tech assignment to utility, failing to have me attend classification where additional punishment was meted out, in violation of due process.  And ignoring AD 12-09, AD 13-42, and 42 USCA 12132 in regards to discrimination and protection of the disabled.  All of which force me to endure physical and emotional hardships.  This also forces emotional hardship upon my mother, which I find to be the greater crime.  (*Id*. at 9).

For his third claim, Plaintiff alleges his rights were violated by "emotional trauma in re restricted communication with Sharon Harris violating 1st & 8th Amendments."  (*Id*. at 9).  Plaintiff alleges this occurred between May 15, 2021, and June 10, 2021.  (*Id*.).  Plaintiff alleges Defendants Ball and Payne reassigned him to a utility job without notification, placed disciplinary charges against him for not attending the utility job assignment (including two in one day), and thereby disrupted his communication with his mother.  (*Id*.).  Plaintiff alleges that the ADC disciplinary policy which characterizes each day or work call as a distinct incident is "at least double jeopardy."  (*Id*. at 10).  He further alleges that the denial of his right to speak to his mother is a violation of his First Amendment rights.  (*Id*.).  Plaintiff proceeds against Defendants Ball and Payne in their official and personal capacities.  (*Id*. at 9).

Plaintiff seeks compensatory and punitive damages.  (*Id*. at 1).  Specifically, he asks for:

Compensatory – Court fees for this and case 21-6118.[6]  $500 per day for self & mother for total restricted time, $500 per day for TE/PE date extension.

Punitive – Significant portion of salary donated to Arkansas Pro Bono Partnership of Little Rock, restoration of good time credit taken & lost for class status, restoring my previous PE/TE date of 10-27/24, and elimination of further restricted status in re this issue only.  Real migraine meds.  (*Id*. at 10).

---

[6] *Harris v. Ball*, Case No. 6:21-cv-06118, was dismissed at screening and a strike flag assigned on November 18, 2021.

## II. LEGAL STANDARD

Under § 1915A, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes,* 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler,* 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. ANALYSIS

### A.   Official Capacity Claims – ADC Defendants

Plaintiff's official capacity claims against the ADC Defendants are subject to dismissal. "Claims against individuals in their official capacities are equivalent to claims against the entity

5

for which they work." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir.1998). Thus, Plaintiff's official capacity claim against Defendant Payne is a claim against the ADC. *Id*. The ADC is an Arkansas state agency. *See Fegans v. Norris*, 351 Ark. 200, 206, 89 S.W.3d 919 (2002). States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose*, 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan,* 440 U.S. 332, 342 (1979)).

Defendants Ball, Payne, and Earl are all employees of the Arkansas Division of Correction. As such, the official capacity claims against them are barred by sovereign immunity.

### B.     Inmate Classification – Defendants Ball and Payne

In his third claim, Plaintiff alleges that Defendants Ball and Payne reassigned him to a utility job without notification. Plaintiff does not have a constitutional right to a particular prison job or classification. *See Sanders v. Norris*, 153 Fed. App'x. 403, 404 (8th Cir. 2005) (unpublished) (citing *Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (per curiam) (prisoners do not have a constitutional right to a particular prison job); *Hartsfield v. Dep't of Corr.,* 107 Fed. App'x. 695, 696 (8th Cir. 2003) (unpublished per curiam) (no liberty interests in particular classification)). As such, his claims concerning his inmate job assignments and classification status are subject to dismissal.

6

### C. Disciplinary Charges Claims – ADC Defendants

Plaintiff's claims concerning his disciplinary charges and their effect on his projected release date are barred by the *Heck* doctrine. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. The Court noted that if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.

The *Heck* doctrine applies to inmate disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). An inmate challenge to the validity of a disciplinary conviction is barred by *Heck*. *Edwards,* 520 U.S. at 646-48. Any challenge to the effect of the disciplinary sanction on the award or revocation of good-time credit is also barred, as the credit will ultimately change the duration of the sentence served. *Id.* Thus, *Heck* requires favorable termination of the disciplinary charge "in an authorized state tribunal or a federal habeas court, even if the claim is for damages rather than earlier release." *Sheldon v. Hundley,* 83 F3d. 231, 233 (8th Cir. 1996); *Cincoski v. Richard*, 418 Fed App'x 571, 571-72 (8th Cir. 2011) (Plaintiff's claims regarding his disciplinary convictions, including restoration of good-time credits, declaratory relief, and damages based on those convictions were *Heck*-barred.)

Here, Plaintiff has not alleged that his disciplinary charges were favorably terminated. This, his claims concerning his disciplinary charges and their effect on his projected release date are *Heck*-barred.

### D. Communication with Mother – ADC Defendants

Plaintiff failed to state a cognizable claim that his First and Eighth Amendment rights were violated when he was not permitted to speak to his mother between May 15, 2021, and June 10, 2021, as part of a disciplinary charge sentence. *See Ware v. Morrison,* 276 F.3d 385, 387–388 (8th Cir. 2002) (Inmate "had no constitutionally protected interest implicated by the suspension of his visitation privileges."); *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985) (prison officials can reasonably limit prisoner's right to communicate with people outside prison when necessary to maintain security); *Steinbach v. Branson*, Case No. 1:05CV101, 2007 WL 2985571, at *5 (D.N.D. Oct. 9, 2007) ("prisoners have no constitutionally protected rights to visitation with any particular person," including the "prisoner's mother, wife, child, or close friend."). Thus, Plaintiff's inability speak with his mother for a short period of time as part of his disciplinary charge sentence fails to state a cognizable constitutional claim.

### E. Denial of Medical Care for Migraines – Medical Defendants

Plaintiff states plausible personal and official capacity claims concerning the denial or delay of medical care for his migraines.

### IV. CONCLUSION

Accordingly, the undersigned makes the following recommendations:

1. Plaintiff's official capacity claims against Defendants Ball, Payne, and Earl should be DISMISSED WITHOUT PREJUDICE.

2. Plaintiff's personal capacity claims against Defendants Ball, Payne, and Earl should be DISMISSED WITHOUT PREJUDICE.

3. Defendants Ball, Payne, and Earl should be TERMINATED as Defendants in the case.

4. Plaintiff's official and personal capacity claims that Defendants Dr. Henry and John Doe Medical Director denied or delayed proper medical treatment for his migraines should remain for further review.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **4th day of April 2022**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE