IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAY LLOYD HARRIS                                                                                          PLAINTIFF

v.                                      Civil No. 6:21-CV-06157-SOH-MEF

DEPUTY WARDEN RICHARD T. BALL,                                                        DEFENDANTS
DIRECTOR DEXTER PAYNE, DR. GUY
HENRY, JOHN DOE MEDICAL
DIRECTOR,[1] WARDEN DeANGELO
EARL, and WELLPATH, LLC.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are a Motion for Summary Judgment on the Issue of Exhaustion by Defendants Ball, Earl, and Payne (the "ADC Defendants") (ECF No. 22) and a Motion for Summary Judgment by Defendants Henry and Wellpath LLC (the "Medical Defendants"). (ECF No. 29).

### I.     BACKGROUND

Plaintiff filed his Complaint on December 14, 2021. (ECF No. 1). He alleges that his federal constitutional rights were violated while he was incarcerated in the Ouachita River Unit ("ORU") of the Arkansas Division of Correction ("ADC"). For his first claim, Plaintiff alleges that from February 6, 2019, to the present, Defendants Dr. Henry and John Doe Medical Director of the ADC denied him proper medical treatment for his "migraines and . . . aural migraines" in

---

[1] The Doe Defendant has not been identified, and the deadline to do so has passed.

1

violation of the Eighth Amendment. (ECF No. 1 at 4). Plaintiff alleges he was given ineffective over the counter ("OTC") drugs instead of his preferred migraine medications,[2] and further alleges repeated delays in the renewal of his migraine medication refills. (*Id*.). Specifically, Plaintiff notes delays on refills in February 2020, September 2021, and November 2021. He states he was told his medication was on backorder for the September and November refill periods and was switched to Tylenol on November 29, 2021. (*Id*. at 5). Plaintiff alleges his "migraines have been increasing in frequency and duration since July 2021, hitting up to 6 days a week." (*Id*.). Plaintiff "speculates[s]" that Dr. Henry failed to mention his migraines in the EOMIS records so that the ADC Classification Committee can "readily see it." (*Id*.).

Plaintiff proceeds against the Medical Defendants in their individual and official capacities for this claim. (ECF No. 1 at 4). For the official capacity portion of his first claim, Plaintiff alleges that Defendant Dr. Henry chose less efficacious migraine medication(s) due to an ADC policy to limit medical costs, and the ADC Medical Director is the lead authority on ADC medical policies. (*Id*. at 6). Plaintiff alleges that "this has left me in regular pain or trying to sleep through such pain. Refusal to give me proper medication has also prevented me from risking outside yard time." (*Id*.). Plaintiff further alleges "multiple nurses have mentioned an alternative medication as if it were not only on-hand but expected to have been prescribed from the start." (*Id*.). Plaintiff alleges that the Medical Defendants were deliberately indifferent and inmates "can't get a second opinion, even though other medical doctors work onsite." (*Id*. at 7). Plaintiff does not identify the alternative medication he alleges was recommended.

---

[2] Plaintiff identifies two drugs, neurophen and caffergot, which he states worked for him, but also states they are not available in the United States. (*Id*. at 5)

For his second claim, Plaintiff proceeds against Defendants Ball, Payne, and Earl in their official capacity only. (ECF No. 1 at 6). Plaintiff alleges they violated his rights from May 15, 2021, to the present. (*Id*.). He states Deputy Ball removed him from an education vo-tech work assignment and put him on the utility "hoe squad" assignment, which was an outdoor work assignment. Plaintiff alleges his migraines do not permit him to work outdoors, and therefore the assignment violates the Americans with Disabilities Act and the Eighth Amendment. (*Id*.). He alleges the sunlight can trigger his aural migraines and cause him to black out. (*Id*. at 8). He alleges he made a "request" to Defendant Earl and did not receive a reply.[3] (*Id*.).

For his third claim, Plaintiff alleges he received disciplinary charges for not attending the hoe squad assignment (including two charges in one day), and his punishment for those charges disrupted his visitation and phone or video communication with his mother from "May 15th to June 10th, 202[1][4] (Currently)."[5] (ECF No. 1 at 9). He alleges that the denial of his right to speak to his mother is a violation of his First and Eighth Amendment rights. (*Id*.). Plaintiff proceeds against Defendants Ball and Payne in their official and personal capacities. (*Id*.). For his official capacity portion of this claim, Plaintiff alleges removing him from the vo-tech assignment to the hoe squad, as well as his not attending "classification" where "additional punishment was meted out" was a violation of his due process rights. (*Id*.).

On April 4, 2022, the Hon. Barry Bryant, Magistrate Judge, entered a Report and Recommendation pursuant to 28 U.S.C. § 1915A. Plaintiff filed his Objections on April 14, 2022. (ECF No. 8).

---

[3] Plaintiff also alleges he made requests to Warden Watson and Warden Byers concerning this issue.
[4] Plaintiff wrote 2022 on his Complaint, but as he had filed the Complaint in December of 2021, this was clearly an error.
[5] The timeframe was interpreted to be from May 15, 2021, through June 10, 2021.

3

On April 19, 2022, Chief Judge Hickey adopted the Report and Recommendation in part. (ECF No. 9). Chief Judge Hickey dismissed Plaintiff's official capacity claims against the ADC Defendants, and his individual capacity claims against the ADC Defendants for ADC disciplinary charges. (*Id*. at 6). Plaintiff's individual capacity claim against the ADC Defendants for his work reassignment; his individual capacity claim against the ADC Defendants for restriction of his visitation privileges; and his official and individual capacity claims for deliberate indifference against Medical Defendant Henry remained for further review.

On April 20, 2022, Judge Bryant entered an Order directing the Clerk to add Wellpath, LLC as a Defendant in the case. (ECF No. 10).

### 1. The ADC Defendants Summary Judgment Motion

The ADC Defendants filed their Motion for Summary Judgment on the Issue of Exhaustion on September 14, 2022. (ECF No. 22). The ADC Defendants argue summary judgment in their favor is appropriate because Plaintiff failed to file or exhaust any ADC grievances against the ADC Defendants regarding the claims in this case. (ECF No. 24 at 2). Defendants identify three grievances which were filed by Plaintiff concerning the claims in this case during the relevant period. OR-21-00405 grieves the negative effect his disciplinary convictions had on his job assignment and inmate classification. The grievance was found to be without merit, and the appeal was rejected for failure to include the proper attachments. (ECF No. 22-1 at 7-8; 22-3). OR-21-00414 grieved his outside job assignment and referenced his migraines. (ECF No. 22-1 at 8; 22-4). The response stated he had no medical restrictions which prohibited him from working on Utility. His appeal was rejected for failure to include the proper attachments. (ECF No. 22-4 at 2). OR-21-00423 complains of the disciplinary charges he received for failing to report to his work assignment. The grievance was found to be a non-grievable issue per AD 19-34, and his

appeal of that finding was rejected for failing to include the proper attachments. (ECF No. 22-1 at 8; 22-5). For all three grievances, Plaintiff failed to name any of the ADC Defendants named in this case. (ECF No. 22-1 at 7-8; 22-3; 22-4; 22-5). No grievances concerning the restricted visitation and communication with his mother were identified or provided in the record.

Plaintiff filed his Response, with a one-page document labelled Statement of Disputed Facts attached on September 28, 2022. (ECF No. 22). In his Response, Plaintiff does not dispute that he failed to exhaust any grievances concerning the issues in this case and does not allege the ADC grievance process was unavailable. Instead, Plaintiff argues that the ADC Defendants' brief only addresses the work assignment issue; it ignores the restricted communication with his mother. (ECF No. 28 at 1). He further states: "Due to the fact medical staff still refuses to issue a 'No Outdoor Activity' medical restriction, no grievance was actually filed." (*Id*.). Plaintiff argues he had to write "secondary" grievances, but he does not explain what this means or identify any "secondary" grievance related to this case by ECF document and page numbers. (*Id*.). Plaintiff argues the grievances were forwarded just as he got them in the mail, but they had a page missing "after the fact." (*Id*.). Plaintiff does not reference any exhibits in the Record.[6] Plaintiff does not allege he filed a grievance concerning the restricted visitation or communication with his mother.

In the portion of his Response labelled as a Statement of Disputed Facts, Plaintiff makes three statements: (1) "Grievances were not required, as the actual issue has been deemed non-grievable by the ADC"; (2) Defendants addressing only part of the case issues begs the question of the validity of the argument and respect for the court; ADC experts should do more than "rubber

---

[6] Because no reference is made to evidence in the record, these last two arguments will not be considered. As Plaintiff was advised in both orders directing him to provide a summary judgment Response, the Court will *not* sift through the record looking for evidence to support his claims. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113-14 (8th Cir. 2004).

stamp" replies and witness testimony, especially when the barest hint of effort would save so much time. (ECF No. 28 at 2).

### 2. The Medical Defendants Summary Judgment Motion

The Medical Defendants filed their Motion for Summary Judgment on October 17, 2022. (ECF No. 29). The Medical Defendants argue summary judgment in their favor is appropriate because Plaintiff cannot put forth sufficient evidence to support his claim that Defendants acted with "deliberate indifference" to Plaintiff's migraines. According to their medical expert, Plaintiff was seen regularly in Health Services for "a number of medical complaints, including headaches, knee pain, wrist pain, and back pain. He was prescribed a number of medications, including the Pain Reliever Plus medication, ibuprofen, and naproxen." (ECF No. 31-1 at 1). She further opined Dr. Henry refilled the prescription of Pain Reliever Plus in a timely manner. (*Id*. at 2). She noted Plaintiff routinely took other pain medications for his back, knee, and wrist. (*Id*.). In her opinion, the medical care and treatment provided to Plaintiff for his migraines was appropriate, adequate, and timely. (*Id*.).

Plaintiff filed a Response and a Statement of Facts on November 2, 2022. (ECF Nos. 33, 34). In his Response, Plaintiff argues American OTC migraine medication is "woefully inadequate," and the "Pain Reliever Plus" the ADC medical staff gave him was "fake Excedrin" and limited to 24 per month. (ECF No. 33). Plaintiff further argues he needs between 8-10 of Pain Reliever Plus for his least aggressive migraines, and his supply was later limited to 20 per month. (*Id*.). In his document labelled as a Statement of Disputed facts, Plaintiff states he suffered what he refers to as a "2nd level migraine" on April 11, 2019, and when not incarcerated he took a British migraine medication containing ibuprofen and codeine for that level of migraine. He cites his Exhibit 15. (ECF No. 34 at 1). He alleges his prior "1st level" migraine was reported on April 3, 2019, but he did not get "fake Excedrin" until May 2, 2019. He also argues that he

6

experienced issues with his prescription for Pain Reliever Plus running out without notice, and states he experienced delays in obtaining the refills. He cites several exhibits attached to his Statement.

Exhibit 15 contains several medical encounters and requests. Plaintiff was seen on April 3, 2019, with complaints of leg and lower back pain, heat-related migraines, and dizziness. (ECF No. 34 at 6). He was seen on April 11, 2019, reporting that the migraine had persisted, and sun exposure made it worse and caused vomiting. (*Id*. at 7). He was seen for a medical renewal encounter dated April 24, 2019, for Pain Reliever Plus, which contains acetaminophen, aspirin, and caffeine. (*Id*. at 8). A medication administration record at the bottom shows May 2, 2019; as the last record on the bottom of the page, it does not show dates earlier than May 2nd. He received 48 tablets of Pain Reliever Plus to be kept on his person. (*Id*.). Based on his argument above, and plaintiff's notations on the Exhibit, Plaintiff appears to be arguing that this was the first time he received the Pain Reliever Plus after reporting a migraine on April 3, and April 11, 2019.

Review of Defendants' Exhibits for those dates indicate he was seen for a headache on April 4, 2019. He was prescribed Naproxen and Loratadine twice a day as needed for 5 days. (ECF No. 31-2). He was seen for a headache on April 12, 2019. (ECF No. 31-3). He was again prescribed Naproxen and Loratadine twice a day as needed for 5 days. (*Id*.). He was seen for a headache on April 16, 2019. (ECF No. 31-5). He was prescribed Pain Reliever Plus, 24 tablets monthly, and Topiramate[7], once a day in the morning for 30 days. (*Id*.). The prescription indicated he was to keep the Pain Reliever Plus on his person. (*Id*. at 1). Plaintiff was given 24 tablets of Pain Reliever Plus on April 22, 2019. (*Id*. at 2).

---

[7] Topiramate is the generic drug name for this drug. The brand name is Topamax. www.webmd.com (last accessed April 3, 2023). The drug is approved for the prevention of migraines. (*Id*.).

Plaintiff cites his Exhibits 7, 8, 9, 16, 17, and 18 as examples of deliberate indifference regarding the refill of his Pain Reliever Plus medication. (ECF No. 34 at 1-2). Exhibit 7 indicates the pharmacy vendor refused to refill an order on February 3, 2020, because the prescription had expired. It was renewed. (*Id*. at 3). Exhibit 8 also indicates the pharmacy refused a refill for the same reason on April 21, 2020. The prescription was renewed. (*Id*. at 4). Exhibit 9 is a Health Services request dated July 22, 2020, in which Plaintiff states "Nothing from you for 6 months. I don't need Excedrin, I'll settle for anything that will let me sleep it off." (*Id*. at 5). Defendants' records indicate Plaintiff was seen on July 22, 2020, at which time he stated his Pain Reliever Plus no longer worked, but "naproxen will work." (ECF No. 31-9 at 1). He was given nine days of naproxen tablets, and the nurse wrote that she would talk to Dr. Henry about a 30-day prescription for naproxen. (*Id*.).

Exhibit 16 contains health service requests. On September 16, 2019, he states he "never got last month's refill of pain reliever plus" for his migraines. (ECF No. 34 at 9). The response states: "[Y]our Excedrin is expired, place a request to be seen in sick call for a potential renewal. (*Id*.). On October 2, 2019, Plaintiff placed a Health Service Request stating his Pain Reliever Plus was somehow discontinued, even though the Topamax prescription that it was to be paired with was active until December. (*Id*. at 10). He was scheduled for a sick call on October 4, 2019. (*Id*.). The prescription was refilled on October 7, 2019, and he received his refill on October 8, 2019. (*Id*. at 11).

Exhibit 17 contains three health service requests. The first is dated November 23, 2019. Plaintiff asked, "when do I get my Pain Reliever Plus refill." (*Id*. at 12). A response dated November 25, 2019, states: "You must request refill every month. Request has been sent to pharmacy for this month's refill. Will come OPM when available." (*Id*.). On January 30, 2020,

Plaintiff asked for a renewal of his migraine medication. The response indicates a renewal request was sent to the doctor. (*Id*. at 13). The third is dated October 22, 2019, and it concerns a refill of acetaminophen for back pain, not migraines. (*Id*. at 14).

Exhibit 18 contains grievance copies. On September 22, 2021, Plaintiff grieved that he had been without his Pain Reliever Plus for a month. (ECF No. 34 at 16). There are some illegible marks on the form where staff are to sign and date the unit level informal submission, but nothing is written on the section of the form for the action taken in response. (*Id*.). On November 15, 2021, Plaintiff placed another unit level grievance, stating that it had been three weeks since he had requested a refill of his Pain Reliever Plus. (*Id*. at 17). It was stamped as received on November 29, 2021. (*Id*.). Plaintiff's next two grievances progressed to the formal stage. In OR-21-00888, Plaintiff grieved on December 5, 2021, that nurses told him Topamax might be a better medication for his migraines, but Defendants Henry prescribed Pain Reliever Plus, and Plaintiff had to "fight" to get that. (*Id*. at 18). The response notes that Defendant Henry had discontinued the prescription on December 1, 2021, but then reinstated it on December 7, 2021. Because the prescription was cancelled without notice to Plaintiff, the grievance was found to be with merit. (*Id*. at 18). Plaintiff submitted OR-22-0001 on December 28, 2021. (*Id*. at 20). Plaintiff grieved that his Pain Reliever Plus was backordered and the nurse suggested ibuprofen which he was "already taking and is bad for my kidneys." (*Id*. at 20). He also grieved that the nurse would not permit him to see the doctor. (*Id*.). The response notes that the Pain Reliever Plus had been on manufacturer backorder from October until mid-December. It was refilled on December 28, 2021. The response further noted that the nurse had failed to complete her notes concerning his request to see the doctor, thus, Plaintiff's grievance was found to be with merit. Finally, the response

noted that Plaintiff was seen by Dr. Henry on January 4th, and he prescribed Topamax once daily. (*Id*. at 21).

The case was reassigned to the undersigned on March 20, 2023, during a District-wide rebalancing of caseloads.

## II.     LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.     ANALYSIS

#### A.     Plaintiff's Failure to Comply with Local Rules

Local Rule 56.1(a) requires any party moving for summary judgment to submit a separate statement of undisputed material facts. Local Rule 56.1(b) requires the non-moving party opposing the summary judgment motion to file a separate statement of disputed facts. *Pro se* inmates are advised of this requirement in the Order directing them to file a summary judgment response. *Pro se* inmates are also advised of this requirement in the District's Prisoner Litigation Guide, which contains an example to help them understand the concept of using the same paragraph numbering as that used by the moving party in their own statement of disputed facts.

Due to Plaintiff's failure,[8] both Statements of Facts submitted by the Defendants are deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint . . . ." *Id*. As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id*. The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

---

[8] Plaintiff submitted documents which, although labelled as being a Statement of Disputed Fact, did not comply with Local Rules or the Court's Order.

### B. The ADC Defendants

Plaintiff's arguments concerning administrative exhaustion are without merit. The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199, 219 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." To properly exhaust administrative remedies "prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Plaintiff contends "[g]rievances were not required, as the actual issue has been deemed non-grievable by the ADC." This argument fails for three reasons. First, Plaintiff does not identify

12

which grievance he is referencing, and the argument is puzzling on its face, as only one of the three grievances was initially denied because it was found to be a non-grievable topic. Second, Plaintiff made the same unsuccessful argument in a prior case in this District, *Harris v. Payne*, Case No. 6:21-cv-06136. As he was advised in that case, the ADC grievance policy in effect at the time, AD 19-34, permits an inmate to continue though the grievance process to exhaustion in the event he receives an incorrect or unsatisfactory staff response, or simply fails to receive a timely staff response. (ECF No. 22-2 at 11-12). There is no evidence in the summary judgment record that Plaintiff successfully completed the ADC grievance procedure to exhaustion for any of the three grievances. His grievance appeals were rejected because he did not attach the required paperwork, not because the grievances were considered non-grievable. *See Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (to exhaust all available remedies, inmate needed to appeal the grievance response "even if he believed an appeal would be ineffective"); *Lyon*, 305 F.3d 809 (the court should not consider the inmate's subjective beliefs, logical or otherwise, in determining whether administrative procedures are available).

Third, even if Plaintiff had completed the ADC grievance appeal process for any of the three grievances, it would not have been sufficient to meet the exhaustion requirement for this case, because he failed to name any of the ADC Defendants as required by AD 19-34. Thus, Plaintiff failed to comply with ADC grievance procedure to exhaust his grievances. *See Jones*, 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").

Plaintiff argues the ADC Defendants failed to address the issue of the restricted access to his mother in their Summary Judgment documents, and this failure shows disrespect to the Court. This argument also fails. The issue was referenced in Defendants' documents. (ECF Nos. 24 at

2; 22-1 at 7 ¶¶ 36, 37). Further, Plaintiff does not dispute that he failed to file or exhaust any grievances concerning visitation or communication to his mother. This is a motion for summary judgment on the issue of grievance exhaustion. Defendants cannot provide factual legal analysis based on nonexistent facts.

### C.   The Medical Defendants

Plaintiff's allegations concerning medical care for his migraines are contradicted by the summary judgment record such that no jury could believe them. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*,

14

512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

There is no dispute that Plaintiff's migraines are an objectively serious medical need. Plaintiff did not, however, meet the second, subjective prong of the deliberate indifference test. Based on the summary judgment record, Plaintiff was seen frequently by Health Services staff, at times on the same day that he made his request. The record also reflects that he routinely received several pain medications for a variety of medical issues. There were some instances where his Pain Reliever Plus prescription was not renewed before the prescription expired. For most of these instances, however, Plaintiff himself caused the lapse. Plaintiff is permitted to keep the tablets on his person to use as needed and is required to ask for a refill each month. Based on the responses to some of his requests, he did not do so. When he submitted a Health Service Request, the prescription was promptly refilled. There is no dispute that there was a manufacturer backorder for a period between October through mid-December of 2021. Nor is there any dispute that Plaintiff was offered alternative pain medication during that time. Finally, Plaintiff alleges that

the Medical Defendants denied him more effective medications for his migraines. The record indicates he wants certain medications not available in the United States, and that he was given other medication to prevent migraines and medication for pain if they occurred. Finally, Plaintiff correctly notes that Defendant Henry cancelled his Pain Reliever Plus prescription in early December 2021. It was, however, reinstated six days later.

Based on this summary judgment record, the Court concludes the care Plaintiff received was constitutionally sufficient. Courts "hesitate to find an [E]ighth [A]mendment violation when a prison inmate has received medical care." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). *See also, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment does not require that prisoners receive "unqualified access to health care"); *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) (it is not constitutionally required that care be "perfect, the best obtainable, or even very good") (citation omitted); *Schaub v. VonWald*, 638 F.3d 905, 935 (8th Cir. 2011) (Beam, J., dissenting) ("inmates are only entitled to adequate medical care, not the best care possible") (internal quotation marks and citation omitted).

While Plaintiff disagrees with the quality of care provided, such disagreement does not rise to a constitutional violation. The Eighth Circuit has "repeatedly held that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail to rise to the level of a constitutional violation." *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's disagreements on location of rehabilitation for burn injuries, amounts of pain medication, and frequency of bandage changes failed to state deliberate indifference); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989) (prisoner's disagreement about treatment for mental deficiency, surgery for hernia, hearing deficiency, and nutritional deficiency found insufficient); *Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir. 1988) (mere disagreement about which medication

should have been prescribed does not constitute an Eighth Amendment violation); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (prisoner's disagreement about treatment of pain in his lower back and arm did not constitute an Eighth Amendment violation).

## IV.     CONCLUSION

Accordingly, it is recommended that the Motion for Summary Judgment on the Issue of Exhaustion by Defendants Ball, Earl, and Payne (ECF No. 22) and the Motion for Summary Judgment by Defendants Henry and Wellpath, LLC (ECF No. 29) both be GRANTED, and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of April 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE